**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CASE NO. 21-CR-404 (JDB)** |
| : | |
| **v.** : | |
| : | |
| **ROBERT RILEY,** : | |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 96 months (8 years) to be followed by 120 months (10 years) of supervised release, with the conditions recommended by United States Office of Probation. Additionally, the defendant is required by statute to register as a sex offender. In support of this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

**I.   BACKGROUND**

   **A.   Statement of Offense**

   Leading up to February 26, 2019, a detective with the Metropolitan Police Department ("UC") was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force operating out of a local office in Washington, D.C. In that capacity, the UC entered a public group on KIK[1] with a title indicative of its use for the exchange of child pornography and other child exploitation activity. While observing the users in the group, the UC observed user "demon_1993," later identified as ROBERT ANDREW RILEY (herein "RILEY") post a message asking if anyone was "live" with their children. The UC initiated a private KIK chat

---
[1] KIK is a freeware instant messaging mobile application.

with this user. During the court of the chat, RILEY stated that he was looking for someone "legitimate" to be his "moderator"[2] of a KIK group for real parents. RILEY added the UC to a group called, "Taboo Parents" and made the UC a moderator of the group.

Between February 26 and March 27, 2019, "Taboo Parents" had 54 unique members who entered into the group. Membership ebbed and flowed over that period as users entered and left the group, but as of March 27, 2019, there were 36 members in the group. In addition to RILEY, these members during this time period included users with the user names "littlesarah6021," later identified as RICHARD CASEY MCGARRAH (herein "MCHARRAH"); "lacylaw2," later identified as ASHLEY ANNE IVERSON (herein "IVERSON"); "carolinamilv," later identified as JAMES RICHARD BENNETT (herein "BENNETT"); "chronicchef23," later identified as CODY TAYLOR GRIGORIADIS (herein "GRIGORIADIS") "ohyes2756," later identified as DYLAN CHARLES YOUNG (herein YOUNG); "sarahharas7c;" clynn68, later identified as BRITTANY COLLEEN BAILEY (herein BAILEY); and "alandemily47," later identified as ALVA REED REES (herein REES)

In his role as moderator of the "Taboo Parents" KIK group, RILEY had authority to add members to or ban members from the group, as well as set rules for the group. For example, on March 17 and March 22, 2019, respectively, RILEY invited KIK users "brownietrucker24" and "mio210" to the group. On March 8, 2019, RILEY stated, "Do not randomly add people instaban,"[3] to which GRIGORIADIS replied "copy that." RILEY replied, "Ill let it slide."[4] RILEY then banned a member with the display name "tony .", demonstrating that he was an administrator who had the power to invite

---

[2] A moderator, also called an administrator, in a KIK Group is responsible for inviting new members to the group, banning members from the group, and establishing the rules of the group.
[3] "instaban" is a shorthand for "instantly banned," meaning the user would be immediately removed from the group.
[4] All typographical errors or text abbreviations in quoted chat language are original.

or remove members.  On March 9, 2019, the user with the display name "tony ." was re-invited to the chat by MCGARRAH, another of the group's moderators who also had the power to add and remove members. In response, RILEY wrote, "Tony you have one strike, which resulted in a temporary ban. My only rule is Do not add anyone without permission .we clear? Goes for all non admins cause it defeats the verification process."

In the "Taboo Parents" KIK group, moderators and users discussed the sexual abuse of children and encouraged the members to post and share with "no limits."  For example, on March 9, 2019, the following exchange occurred:

> IVERSON: I would love to watch a young boy and a young girl put the same age played with by a man
>
> Peterfc90: Yeah lacy! Have u there holding them down for us to use them
>
> IVERSON: Dreams ahhhhhh……..
>
> Eliforp2019: Lacy, would you use them yourself?
>
> Peterfc90: Hopefully
>
> IVERSON: I'd help for surr
>
> IVERSON: I just love watching. I used to have A friend that I'd let come touch any kids that I had asleep here n I just watched
>
> Peterfc90: Hot
>
> Peterfc90: Love to come use them infront of u
>
> IVERSON: Mmmmm please
>
> Eliforp2019: Just watch? Did you masturbate too?
>
> IVERSON: Of course I came like 5 times the first time he came n touched 4 kids

On March 11, 2019, the following exchange ensued:

IVERSON: Anyone with very young kids?

IVERSON: I had sex in front of my niece she is 3. We lickerd her. N today I'm going to try n have her for a few days so we can fully break her in. Like I want my friend to do it all

During the time the group was moderated by the UC, images and videos depicting child pornography were posted to the group by multiple users. For example, on March 9, 2019, at 4:57 PM EST the following conversation occurred in the "Taboo Parents" group chat:

GRIGORIADIS: Anyone in socal? Thinking about hosting

GRIGORIADIS: Or is that a bad idea?

Littlesarah6021: Never a bad idea

GRIGORIADIS: lol okay

Eliforp2019: Would… would your wife get involved? With the young ones?

GRIGORIADIS: Probably go for when she outa town for that one

GRIGORIADIS: Think it be cool if a group took the youngest ones cherry

GRIGORIADIS then posted a 14 second video file depicting child pornography involving a prepubescent female. In response IVERSON stated, "My dream would be to help a man with a girl about the age of the girl in video,"

On March 11, 2019, IVERSON sent an image of her face with the text "Meeee" as well as a video of herself nude to the group. In the video, her face is visible to the camera and a tattoo can be seen on her right abdomen/hip area. IVERSON then posted clothed images of her son and daughter to the group, and subsequently wrote "I love cp and bp."[5] She further stated, "Mmmm I've got links." REES, stated "will you share the links with us." The following conversation then begins at 7:53PM EST:

---

[5] "cp" is an abbreviation for "child pornography."

Justmeag1: Please share, ((,

IVERSON: [link to a maga.nz[6] page]

Jestmeag1: What app is that

IVERSON: My fave [second link to a mega.nz page]

IVERSON: Mega

REES: These won't play

IVERSON: They will

IVERSON: Not all but they will

Justmeag1: Waiting patiently

Justmeag1: Impatiently

IVERSON: For what

REES: They won't play

Justmeag1: For them to play

IVERSON: None??

Justmeag1: Nope

REES: They have to be underlined or they won't load

BENNETT: Works here

IVERSON: Then copy n paste it back hetr

Dinero357: Can someone post them on here

BENNETT: Yeah Lacy. I did that . works

REES: [reposts the second Mega.nz link previously provided by IVERSON as an active

---

[6] Mega.nz is file hosting service that allows users to store files and data in the cloud. Users can then share those files via links to the content stored in the mega.nz account.

hyperlink capable of displaying the content therein]

Justmeag1: There we go

BENNETT: Rooms quiet while cocks come our and clits get rubbed lol

Rover35: Hehehe

Justmeag1: Im jacking off lol

Rover35: I best not look until I get home as I'm at work right now

Dinero357: Yes they are hot hot vids

Justmeag1: AMAZING

BENNETT: Moms rubbing clits dad's jacking off. I need a new born to use

YOUNG: Yes!

At that time, the UC reviewed the contents of the links initially provided by IVERSON, one of which was reposted by REES, and noted that they contained numerous videos of children as young as toddlers being sexually abused.

On March 20, 2019 at 2:27 AM EST, RILEY posted a 43 second video file depicting child pornography to the group. The video depicted an adult male penetrating the anus of a female toddler with his penis, and appearing to ejaculate inside the toddler's anus. At 8:14 AM EST on the same date, apparently in response to the video posted by RILEY, user "kendra112211" stated, "That's my favorite video." She continued, "Anything else just like that toddler getting her ass filled?" "kendra112211" then posted a Mega.nz link. At that time, the UC reviewed the contents of the link provided by "kendra112211" and noted that it contained numerous videos depicting the sexual abuse of children.

On March 25, 2019, at 12:53 AM EST, RILEY posted a 20 second video of a prepubescent female child approximately 10 years old performing oral sex on an adult male. At 1:22 AM EST, RILEY posted an image file taken from the back side of a female child who is on her knees and elbows

with her legs spread apart exposing her vagina to the camera. In response, KIK user "rover35" stated,"Wow gorgeous;" MCGARRAH stated "Yummy;" KIK user "dinero357" stated "Mmmm yes;" and user "eliforp2019" stated, "I imagine her mommy lubing up a strapon for that presentation.."

FBI used administrative subpoena returns, law enforcement and open source databases to confirm the identity of "demon_1993" as the defendant, Robert Riley. After Riley was arrested, he gave a custodial interview FBI agents, during which he admitted to being an owner/administrator of the KiK chat group "Taboo Parents," admitted to posting child pornography in that group on two occasions, and confirmed having the authority to ban members of the group.

**B.     Procedural Posture**

On May 13, 2019, the defendant was arrested in his home state of Alabama on an arrest warrant issued out of the United States District Court for the District of Columbia in connection with a Criminal Complaint charging the defendant with one count of Advertisement of Child Pornography in violation of Title 18 United States Code Section 2251(d), one count of Distribution of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2) and one count of Conspiracy to Distribute Child Pornography in violation of Title 18 United States Code Sections 2252(a)(2) & (b)(1). The defendant was transferred to this jurisdiction and made his initial appearance in this court on June 18, 2019. A detention and preliminary hearing was held on June 20, 2019, at which time probable cause was found and the defendant was ordered detained pending trial. The parties then continued additional status hearings multiple times as the parties engaged in discovery and substantial plea negotiations. The parties ultimately reached a resolution to this case short of trial.  Pursuant to a signed plea

7

agreement, the Defendant pled guilty on June 30, 2021 to One Count of Distribution of Child Pornography in violation of 18 U.S.C. Section 2252(a)(2) before your Honor and the case was set for sentencing.

That sentencing date was continued inter alia to allow for the completion of the Defendant's pre-sentencing psychological examination and due to the ongoing COVID-19 pandemic. It is now set for January 11, 2022 before your Honor.

II.     SENTENCING CALCULATION

   A.  Statutory Penalties

The offense of Distribution of Child Pornography, in violation 18 U.S.C. § 2252(a)(2), carries a mandatory-minimum prison sentence of 5 years and a maximum sentence of 20 years imprisonment, a maximum fine of $250,000, and a term of supervised release of not less than five years and up to life pursuant to 18 U.S.C. § 3583. See Final Presentence Investigation Report filed December 28, 2021 (ECF 44) ("PSR") ¶¶ 4, 6, 153, 156, 159. Pursuant to 18 U.S.C. § 3013(a)(2)(A), the defendant must pay a mandatory special assessment fee of $100 for the felony conviction payable to the Clerk of the United States District Court for the District of Columbia. See PSR ¶ 170. The defendant must also register as a sex offender pursuant to 18 U.S.C. § 2250 and 34 U.S.C. §§ 20911(3), and 20915(a)(2).

   B.  Sentencing Guidelines Range

All parties agree that the applicable Estimated Guidelines Range is 188 to 235 months incarceration. See PSR ¶¶ 4, 6, 46-56, 152, 153. The base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2). The parties agree that several specific offense characteristics apply: the offense involved a prepubescent minor or minors under the age of 12 (+2); the offense involved knowing distribution (+2); the offense involved depictions of infants/toddler, or sadistic and/or

masochistic conduct (+4); the offense involved the use of a computer or an interactive computer service (+2)); and the offense involved between 150 and 300 images (+3). See id. In addition to the above, the defendant qualifies for a role enhancement pursuant to 3B1.1 as the Organizer/leader of 5+ participants (+4).

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Id. ¶ 58. The government requests that the defendant's level be decreased by an additional point pursuant to § 3E1.1(b), as the defendant timely notified authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. Id. ¶ 59. With these adjustments, the defendant's total offense level is 36.

The defendant has a total criminal history score of zero points. Id. ¶ 63. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I. With a total offense level of 36 and a criminal history category of I, the defendant's recommended guideline sentencing range is 188 to 235 months, and a supervised release range of 5 years to life, and an effective fine range of $40,000 to $250,000. Id. ¶¶ 169, 173. This offense also carries a mandatory minimum term of incarceration of 60 months.

## III. GOVERNMENT'S RECOMMENDATION

### A. Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.") After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

### B.   Basis for the Government's Recommendation

Given the particular circumstances of this case, the government submits that a sentence of 96 months incarceration, to be followed by 120 months supervised release, and the specific conditions of supervision recommended by the United States Office of Probation is appropriate and warranted based on the factors outlined in 18 U.S.C. § 3553(a). The recommended sentence, which is significantly below the low end of the estimated sentencing guideline range but significantly above the mandatory minimum, is sufficient, but not greater than necessary to accomplish the purposes of sentencing. Given the particularly serious nature of the defendant's

conduct in this case that is beyond that of other members of the same group (including his leadership role), and his risk to the community, balanced against his lack of criminal history, and early acceptance of responsibility, the government believes this is an appropriate sentence.

1. **Nature and Circumstances of the Offense**

As the court is well aware, the defendant's distribution of child pornography is a serious, violent offense. This is so not just because of Congress' designation of it as such and imposition of a five-year mandatory minimum term of incarceration. As many courts have recognized, "[It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way." United States v. Miller, 665 F.3d 114, 123 (5th Cir. 2011).

In this case, the child pornography that the defendant distributed was particularly heinous, including a video that depicted an adult male penetrating the anus of a female toddler with his penis, and appearing to ejaculate inside the toddler's anus. Moreover, the defendant did far more than distribute videos and also far more than many other members of the "taboo parents" group. He played a clear leadership role: inviting members to join the child pornography group, "verifying" users, seeking out child pornography group moderators and others who are "live" with their kids, and warning or banning those who didn't follow the rules. In doing so, he actively encouraged and facilitated the large-scale distribution of child pornography.

2. **Defendant's History and Characteristics**

The government notes that the defendant has no criminal history, and this was certainly a consideration in the government's plea agreement and allocution herein. However, as the Court

is also well aware, a lack of criminal history is common in child pornography cases such as these, and often does not tell the whole story. Defendants in these cases often carry on a "normal" life a manner that obscures the danger they present. Likewise, the electronic-based nature of their criminal offense often allows them to more easily evade detection and engage in criminal behavior for a longer period than is reflected in their criminal history. The defendant appears to fit this mold.

By his own admission, the defendant distributed child pornography for an extended period of time -- at least the two to three years leading up to his arrest. See PSR ¶ 127(d) (admitting that around the age 22/23 while active on KIK, he began to read the group chats and take previously posted child pornography images to share between the KIK groups he frequented.).[1]

It is particularly concerning that the defendant appears not to have fully come to terms with his behavior -- for example stating that when he sober he is "not attracted to" child pornography and that "it disgusts [him]" -- while simultaneously continuing to abuse substances that he implied lead him to this illegal behavior. See Id. ¶ 109, 121, 122. As the PSR writer recognized, Dr. Bruce indicated the defendant's "motivation for treatment is arguably pre-contemplative as he continues to minimize and/or deny his role in the offense and continues to use illegal substances (synthetic marijuana) while incarcerated." Id. ¶ 125.

**3. Punishment, Deterrence, Protection, and Correction**

The sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate

---

[7] The defendant was age 25 at the time of the charged conduct in the instant case.

deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses. The defendant's leadership role in a child pornography distribution group and distribution of child pornography is harmful to society at large, as well as the specific child victims, and warrants a substantial sentence of imprisonment. As a matter of general deterrence, a sentence of incarceration signals that trafficking in child pornography represents a serious crime that cannot be tolerated. As a matter of specific deterrence, a prison sentence is appropriate and necessary to deter the defendant from committing future child exploitation crimes.

As to the specific term of 96 months incarceration recommended, the government believes that this is an appropriate sentence on balance. On the one hand, the defendant has no criminal history and agreed to plead guilty early, which supports leniency. Moreover, the government recognizes the Court's arguments regarding the sentencing guidelines for child pornography offenses. On the other hand, the defendant not only distributed child pornography (including a video depicting infants/ toddlers), but he played an actively leadership role in a child pornography group and personally encouraged and facilitated the distribution of large quantities of child pornography. This warrants more a serious penalty.

The government acknowledges that its proposed sentence is greater than that given to some others in the "taboo parents" group, including in *U.S. v. Grigoriadis* and *U.S. v. McGarrah* (20-CR-42) wherein your honor sentenced the defendants to 70 months and 72 months incarceration, respectively or *U.S. v. Dylan Young* (19-CR-416), wherein the Honorable Judge

Sullivan sentenced the defendant to 70 months. The government believes that this disparity is warranted based on the leadership role occupied by the defendant and the actions that he undertook to facilitate distribution from others in furtherance of that role, as reflected in the fact that a role enhancement (+4) is applied in this case but not the other forementioned cases.

Furthermore, a term of 10 years supervised release, with specific conditions recommended by the probation office, is crucial to ensuring that the defendant receives the treatment and support he needs to make further attempts to ensure that he does not commit similar offenses in the future.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration, as he is ineligible for probation because it is expressly precluded by the statute. In addition, the court should impose a lengthy term of supervised release to ensure that the defendant does not re-offend. The conditions of supervised release should include: drug and alcohol testing and treatment, sex offender evaluation and treatment, restrictions on direct contact with minors, monitoring of the defendant's use of the Internet, computers, and any other Internet-capable devices, as well as any other special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

## CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 96 months, to be followed by 10 years of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY


_____/s/_____
Nicholas Miranda
Assistant United States Attorney
D.C. Bar 995769
555 4th Street, N.W., Room 1-905
Washington, D.C. 20530
(202) 252-7011
Nicholas.Miranda@usdoj.gov